## APPEAL OF BLOCK & KOHNER MERCANTILE CO.

Docket No. 4576. Decided July 31, 1926.

Where under a contract a corporation is obligated to pay a salesman in addition to a fixed salary a percentage of profits over a period of years, it may on the accrual basis deduct such percentage of profits at the end of the first year notwithstanding subsequent losses reduce the amount ultimately paid under the contract.

*H. A. Mihills, C. P. A.*, for the petitioner.
*George G. Witter, Esq.*, for the Commissioner.

Before GRAUPNER,[1] TRAMMELL, and PHILLIPS.

The petitioner deducted, as an ordinary and necessary business expense of 1919, an amount of $5,193.27 credited to the account of a salesman under a contract to share profits. The Commissioner disallowed the deduction and determined a deficiency of $2,184.42.

### FINDINGS OF FACT.

The petitioner, a Missouri corporation making its return on the accrual basis, made, on February 1, 1919, the following contract with one Weinbach and his wife:

THIS AGREEMENT, made and entered into this First Day of February, 1919, by and between the Block & Kohner Mercantile Company, a corporation, party of the first part, Jake Weinbach, of the City of St. Louis, State of Missouri, party of the second part, and Mollie Weinbach, wife of Jake Weinbach, party of the third part, WITNESSETH:

The said parties, for and in consideration of the mutual covenants and agreements herein contained and by each of them respectively to be kept and performed, have made and do hereby enter into the following agreement:

WHEREAS, the party of the first part has heretofore been engaged and is now engaged in the business of selling shoes in wholesale job lots and also regular lines of shoes at wholesale and is desirous of opening and carrying on a special department of its business for the selling of regular lines of shoes at wholesale under the name and style of the Acme Shoe Specialty Company; and,

WHEREAS, the said party of the second part is experienced in the wholesale shoe business and desires to undertake the management of the said department to be known as the Acme Specialty Company; and,

WHEREAS, the party of the first part desires to engage the said party of the second part as said manager; and,

WHEREAS, the parties of the second and third part desire to participate in some manner in the profits of said department and of the entire business of the party of the first part;

---

[1] This decision was prepared during Mr. Graupner's term of office.

Now, THEREFORE, it is agreed between the parties as follows:

Party of the second part shall be manager of the said regular department, the Acme Shoe Specialty Company, and shall travel and call on the trade during the regular season, for a period of three years from the date hereof at a salary of Forty-eight Hundred Dollars ($4800.00) a year, payable monthly, or such other salary from time to time during said period as Charles Block and Louis Kohner, President and Secretary respectively of the said party of the first part, shall draw as officers of said corporation; and the said party of the second part agrees to devote his entire time, energy, attention and services to the interest of the party of the first part, and of the said Acme Shoe Specialty Company, the business of which shall be conducted in the said name.

The said parties of the first part and second part shall have the right at any time during the continuance of this contract to terminate the same upon the one giving to the other six months' written notice of intention so to terminate, and upon the termination of said period, unless a shorter period be mutually agreed upon by all the parties hereto, the said contract shall be terminated and at an end.

If the party of the second part shall die during the period of this agreement, or if he ceases to render active service for the party of the first part (except because of temporary illness), [sic] the right to the said monthly compensation of Four Hundred Dollars ($400.00) shall terminate, and the right to the division of profits, hereinafter mentioned, shall also terminate.

The party of the third part as an inducement to the party of the first part to engage the party of the second part, and as a guarantee for the agreements hereinafter made, shall pay to and deposit with the party of the first part, the sum of Five Thousand Dollars ($5000.00) upon the execution of this contract, the receipt of which sum is hereby acknowledged by the party of the first part.

In further consideration of the services to be rendered by party of the second part, and the deposit of said sum of Five Thousand Dollars ($5000.00) by party of the third part, the party of the first part shall pay to the party of the third part one-third (⅓) of the net profits earned by party of the first part during the continuance of this contract, including the business conducted under the name of the Acme Shoe Specialty Company, and the parties of the second part and third part shall likewise share any losses in said business during said period.

Parties of the second part and third part agree to accept the inventory taken by the party of the first part on December 31st, 1918, as the basis of the invested capital and surplus of the party of the first part, towit, the sum of $47,238.52. It is agreed, further, between the parties hereto that interest at the rate of six per cent (6%) shall be paid to the party of the first part upon the sum of $37,238.52 as an expense before division of earnings [sic] no interest, however, being paid either on the said $5000.00 advanced by the party of the third part or upon $10,000.00 out of the total of said capital and surplus invested to offset the advance made by the party of the third part.

It is further agreed between the parties that in the event any of the outstanding accounts on the books of the party of the first part included in the inventory of December 31, 1918, shall prove bad and uncollectible, and shall be charged off, such items shall not be considered as losses to be shared by the parties of the second part and third part in the computation of net earnings. All losses on new accounts Receivable from the date of this contract, however, are to be shared equally by the parties in computing net earnings. Any differences or disputes as to what constitute " net earnings or losses " shall be de-

termined by the rules applicable in connection with the computation of the Income Tax.

Upon the termination of this contract, either by expiration, cancellation, or otherwise, the profits shall be figured to the date of such termination and any net losses to be shared by the parties of the second part and third part shall be deducted from the said sum of Five Thousand Dollars ($5000.00) deposited by the party of the third part; and the party of the first part shall pay to the party of the third part said sum of Five Thousand Dollars ($5,000.00) so deposited, less any deductions made, as hereinabove stated, for losses incurred, or, if there be no losses, then plus the proper share of profits.

In case of any difference or dispute which the parties hereto are unable to adjust, it is agreed that in such event the matter shall be settled by arbitration; the party of the first part shall name on [sic] arbitrator and the parties of the second part and third part shall name a second, and if the said two persons so selected cannot determine the matter in dispute, they shall call in a third disinterested party whose decision in the matter shall be binding on the parties hereto.

It is expressly agreed and understood that nothing contained in this instrument shall give or be construed to give either of the parties of the second part or third part any interest in the business or the management thereof, or in the capital, surplus, property or capital stock, or obligations of the party of the first part other than herein expressly set out, that is, to a right to share in one-third (⅓) of the profits or losses during such period as the engagement of said party of the second part continues; provided, however, that the parties of the second and third parts shall, at all times, have free access to the books.

Party of the third part does hereby appoint party of the second part as her attorney-in-fact for her and in her name, place and stead to make all settlements, accounts and adjustments of both profits and losses with the party of the first part; to execute all releases and receipts and settlements both for her share of the profits and earnings as well as for her said deposit of Five Thousand Dollars ($5000.00) and adjustments thereon.

The contract was performed until May 27, 1921, when because of losses it was terminated by mutual agreement.

The petitioner on its books of account credited to Weinbach as of December 31, 1919, $5,756.34, which was later corrected to $5,193.27. There was a loss in 1920 and until May 27, 1921.

Mollie Weinbach was a nominal party to the contract.

### OPINION.

STERNHAGEN: The petitioner is entitled to this deduction on the ground that the one-third share of its profits was at the end of the year definitely committed to Weinbach, subject only to be defeated by a subsequent net loss, over which the petitioner had no control. There is no doubt that the petitioner received the full amount of profits and that these profits accrued to it in its own right. See *Traylor Engineering & Mfg. Co.* v. *Lederer*, 271 Fed. 399; certiorari denied, 257 U. S. 638. Coincidently, however, as part of its ordinary business it incurred the obligation to pay Weinbach an amount measured by a percentage of those profits. Weinbach had no right

to have part of the profits impounded or intrusted. He merely had a cause of action in contract the damages of which would be measured by the percentage of profit. This is an accrual deduction.

It is said that the liability is not determined until the end of the contract period, which, so far as payment is concerned, is true. Weinbach could not have sued to recover before the termination of the period. But this is too rigid a test. As a reasonably prudent person the petitioner was committed not to impair this percentage. It was only by a business loss which the petitioner would not reasonably be supposed to bring about voluntarily that the amount could be impaired, and since such a subsequent loss would not be taxable the petitioner here would be in no better tax position in any event.

*Judgment for petitioner.*

TRAMMELL, dissenting: This appeal involves, first, an interpretation of the contract set forth in the findings of fact. It is undisputed that the share of Weinbach in the profits of the taxpayer for the year 1919 was $5,193.27, and that, at the termination of the contract, this was wiped out, together with a substantial portion of the $5,000 deposit. The real question is whether this amount was in fact an incurred obligation on December 31, 1919. If the contract contemplated a settlement only at the expiration of the contract and not before, it is my opinion that the taxpayer could not take the deduction for 1919, as the amount was not determinable, nor was it definitely known that it would have to pay out anything.

To sustain the taxpayer's contention, it is pointed out that Weinbach and his wife reported the amount of the profits for 1919 as income for that year to the State of Missouri and that the corporation paid the tax, charging the amount to them. The taxpayer now claims the Weinbachs could have withdrawn this amount at any time, but the revenue agent reported, in his report which was introduced in evidence, that the officers of the taxpayer corporation stated that Weinbach could not withdraw any profit until the termination of the contract. The contract was for three years unless terminated by consent or notice, as provided therein, and it in fact was not terminated until May, 1921. The following provisions of the contract have a bearing on this point:

*In further consideration* of the services to be rendered by party of the second part, and the deposit of said sum of Five Thousand Dollars ($5000.00) by party of the third part, the party of the first part shall pay to the party of the third part one-third (⅓) of the net profits earned by party of the first part *during the continuance of this contract,* including the business conducted under the name of the Acme Shoe Specialty Company, and the parties of the second part and third part shall likewise share any losses in said business during said period.

\*       \*       \*       \*       \*       \*       \*

*Upon the termination of this contract,* either by expiration, cancellation, or otherwise, the profits shall be figured *to the date of such termination* and any net losses to be shared by the parties of the second part and third part shall be deducted from the said sum of Five Thousand Dollars ($5,000.00) deposited by the party of the third part; and the party of the first part shall pay to the party of the third part said sum of Five Thousand Dollars ($5,000.00) so, deposited, less any deductions made, as hereinabove stated, for losses incurred, or, if there be no losses, then plus the proper share of profits.  (Italics mine.)

These provisions of the contract indicate that the salary was to be paid monthly and the one-third of the profits or losses was to be computed only at the termination of the contract. This is substantiated by the actual acts and conduct of the parties. During the continuation of the contract, the $5,000 deposit was credited to Weinbach; at the end of 1919, one-third of the profits was also credited, followed by the credit of undrawn salaries. These amounts were not withdrawn. At the end of 1920, one-third of the losses was debited. At the termination of the contract, May 27, 1921, one-third of the losses for the remaining period between January 1, 1921, and May 27, 1921, was debited, together with the bad debts ascribed to Weinbach. The balance was paid back to Weinbach as provided in the contract. The losses were deducted from the profits and only the net amount of profits calculated on the full duration of the contract was distributed. So then, in actual practice, the taxpayer paid salaries monthly but did not make any actual settlement of profits or losses until the termination of the contract. It was only then that it could be determined what the profits were for the period set out in the written contract. It seems clear that it was the intention of the parties—and it is borne out by their acts—that the profit and loss was to be determined at the end of the contract and not at any intervening period.

It is true that the tax is based on annual periods and each year should stand on its own basis. If a taxpayer has gains or profits in one year, or pays or incurs expenses in one year, the taxable income is arrived at by allocating to each year the gains or profits or expenses of that year. Based upon this principle, it is argued that, since the corporation had profits in 1919, the taxpayer incurred a liability to pay out a proportion thereof as they were earned in order to satisfy the terms of the contract providing for a division of the profits for the contract period. The fallacy in 'this argument lies in the fact that under the contract the taxpayer did not incur a liability to pay out any proportion of the profits for any particular year. It was only the profits for the entire period which were to be divided. There was no obligation to pay out a proportion of the 1919 earnings. It was a percentage of the earnings of the entire contract period which was to be paid to Weinbach. It was not

known in 1919 whether there would be any profits to be divided at all. It depended entirely upon future and unknown conditions and circumstances. The fact is the taxpayer was never required to pay out anything except the stated salary, as there were no profits to divide.

It can not be said that the taxpayer incurred a liability or became obligated to Weinbach in 1919 because it had earnings in that year, when, under the contract, it was not liable to him for a division of profits unless it had profits for the contract period. The parties evidently contemplated that a situation might arise, as did in fact arise, whereby there would be no profits for the contract period, and the taxpayer undertook by the contract to avoid, and did avoid, incurring any liability to divide each year's earnings separately as they were earned.

In my opinion, the contract must be given effect, and by doing so it follows that no part of the earnings was required to be divided and no liability on account thereof arose until the contract was terminated. It is readily conceded that if it were not for the contract the taxpayer would have been entitled to deduct as expense one-third of the earnings as they were earned. The same would be true if a division of the earnings was contemplated or provided for, but we are confronted by the facts as we find them and the ordinary rule is altered by the terms of the contract. It is not a question only of when the profits were to be divided, but were there going to be any profits for the period to be divided at all. It is not a question of the difference between an accrued or incurred obligation, but was there a liability at all ever incurred to make a division until it could be determined at the expiration of the whole period. When a note is executed payable three years from date, an obligation is incurred when the note is signed, but the obligation does not accrue until it becomes payable. This distinction is fully recognized, but the question here is, Did the taxpayer incur a liability in *1919* to divide the profits of that year when it agreed by contract that it was to divide the profits, not for 1919, but for the entire period? I think it did not. The statute provides for a deduction of expenses paid or incurred. If a taxpayer is on the cash basis only amounts paid out are deductible. If on the accrual basis, only the expenses incurred during the year are deductible. When a taxpayer by contract obligates itself to divide or pay out a proportion of earnings for a period greater than a year and is only obligated to do so provided there are earnings for that *entire period*, no obligation is incurred until it is known that there will be profits for the period provided in the contract. The liability was only contingent. It depended on undeterminable and future events.

As a matter of accounting it would undoubtedly have been proper to have set up a reserve in 1919 out of the earnings of that year to meet what might have been a liability in the future, but reserves are not deductible in determining net income. *Appeal of William J. Ostheimer*, 1 B. T. A. 18; *Appeal of Uvalde Company*, 1 B. T. A. 932; *Appeal of Morrison-Ricker Mfg. Co.*, 2 B. T. A. 1008; *Appeal of Consolidated Asphalt Co.*, 1 B. T. A. 79.

For the foregoing reasons I am unable to concur in the majority opinion.